(682 P.2d 682)

No. 55,668

Kevin L. Stetler, *Appellant,* v. Teresa Hagedorn Fosha, *Appellee.*

Petition for review denied September 6, 1984.

Opinion filed June 14, 1984.

*Jerry M. Ward,* of Ward & Berscheidt, of Great Bend, for appellant.

*Clarence L. King, Jr.* and *Robert M. Adrian,* of King, Adrian, King & Brown, Chartered, of Salina, for appellee.

Before Abbott, P.J., Meyer and Briscoe, JJ.

Abbott, J.: This is an appeal by the plaintiff, Kevin L. Stetler, from a judgment that he was 70 percent at fault in a motorcycle-automobile collision. Plaintiff was operating the motorcycle, and his left leg was amputated below the knee as a result of injuries he received in the accident.

Plaintiff's complaint derives from the trial court's granting partial summary judgment to defendant before trial, and in instructing the jury that the plaintiff was guilty of negligence as a matter of law in exceeding the posted speed limit and that plaintiff's exceeding the speed limit was a cause of the accident. Plaintiff does not complain of the content of the instructions given concerning the partial summary judgment. He does complain that under the facts of this case the cause or causes of the accident were questions of fact for the jury, and that the plaintiff

was prejudiced by the trial court's granting partial summary judgment and so instructing the jury. We agree.

The accident in issue took place in Manhattan at approximately 4:15 p.m. on October 5, 1979. It occurred on Denison Avenue, just south of Hunting Avenue, on the campus of Kansas State University (KSU). Denison is a north-south street.

Plaintiff was a KSU student and a red-shirt member of the football team. On the afternoon of the accident, he had left football practice and was riding his motorcycle southward on Denison on his way to his apartment.

Defendant, Teresa Hagedorn Fosha, was also a KSU student at the time of the accident. Accompanied by her younger sister, she had driven to a parking lot located on the west side of Denison and to the south of Hunting. She had waited in the car while her sister picked up some of defendant's clothing from an indoor swimming pool. Upon her sister's return, defendant drove to the northernmost exit from the parking lot, which is located about one-fourth block from Hunting, and prepared to make a left turn to the north. She stopped and looked to the north and observed cars three or four blocks away heading southward, as well as a southbound bicycle situated to the north of Hunting. No other witnesses mentioned seeing a bicycle.

As defendant was turning into the northbound lane, plaintiff's motorcycle struck the left rear fender of her car. There was a conflict in the evidence as to the location in the street where the accident occurred. Evidence was presented by defendant that the accident occurred in the northbound lane and by plaintiff that it occurred in the southbound lane.

Opinions as to plaintiff's speed varied considerably, as did the evidence concerning his location and path in passing two vehicles north of the accident scene. The evidence is such that the jury could have returned a verdict fixing fault at nearly 100 percent against either the plaintiff or the defendant.

The defendant makes a procedural argument that counsel for plaintiff neither objected to nor signed the order for partial summary judgment and thus waived his right to object to the summary judgment. Defendant cites no authority for her position. The order for partial summary judgment is by the trial judge. The attorney's signature is nothing more than an acknowledgment that the order reflects the judgment of the trial court. Counsel's approval by signing the journal entry, or the lack

thereof, has no effect on the right to appeal. Nor is counsel required to object to an order reflecting the court's judgment before having a right to appeal. The right to appeal is governed by statute, and a notice of appeal is sufficient to put the trial court and opposing counsel on notice that the appealing party objects to the granting of judgment.

General rules concerning the granting of summary judgment were recently reviewed and summarized in *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, Syl. ¶¶ 1-4, 662 P.2d 1203 (1983):

"Summary judgment is proper if no genuine issue of fact remains, giving the benefit of all inferences which may be drawn from the admitted facts to the party against whom judgment is sought."

"A trial court, in ruling on motions for summary judgment, should search the record to determine whether issues of material fact do exist."

"When a motion for summary judgment is filed, a mere surmise or belief by the trial court, no matter how reasonably entertained, that a party cannot prevail upon a trial, will not justify refusing that party his day in court."

"When summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment."

Summary judgment is generally inappropriate when a question of negligence is involved. In *Pedi Bares, Inc. v. First National Bank*, 223 Kan. 477, Syl. ¶ 3, 575 P.2d 507 (1978), it was stated:

"Normally, the presence or the absence of negligence in any degree is not subject to determination by the court on summary judgment, for such a determination should be left to the trier of facts. It is only when it can be said that reasonable men cannot reach differing conclusions from the same evidence that the issue may be decided as a question of law."

Under K.S.A. 60-256(*b*), a defendant may move for summary judgment upon any part or all of a claim against him or her. K.S.A. 60-256(*d*) provides that upon the trial of an action in which partial summary judgment has been granted, the facts found to be without substantial controversy are to be deemed established. There are few Kansas cases in which an entry of partial summary judgment was in issue; but in those cases where partial summary judgment was granted, that issue was clearly distinct from the issues on which factual questions remained. Conversely, in the present case plaintiff's excessive speed could not be clearly separated from the other facts surrounding the accident. We question whether it is ever proper in a negligence action to grant partial summary judgment on a single element of cause when more than one cause is in issue, as was done in this case.

Plaintiff here conceded he was driving in excess of the speed limit. The question is whether the trial court erred in holding that his excessive speed was a cause of the accident. Causation, like negligence, is an issue generally to be determined by the jury. *Schmeck v. City of Shawnee*, 232 Kan. 11, 27, 651 P.2d 585 (1982); *Portwood v. City of Leavenworth*, 6 Kan. App. 2d 498, 502, 630 P.2d 162 (1981).

Plaintiff's speeding may have been an act of negligence per se (see, *e.g., Noland v. Sears, Roebuck & Co.*, 207 Kan. 72, 74-75, 483 P.2d 1029 [1971]), but that does not automatically mean his negligence was a cause of the accident, as the trial court held. In *Williams v. Esaw*, 214 Kan. 658, 660, 522 P.2d 950 (1974), the Supreme Court in examining the cause of a collision stated: "It is a well recognized tenet of the law that before liability can be predicated on the violation of a statute there must be a causal relation between the violation and the injury complained of." The court examined numerous cases in support of the rule that violations of traffic ordinances do not constitute actionable negligence unless such violations are the cause of the accident. See also *Plains Transport of Kansas, Inc. v. Baldwin*, 217 Kan. 2, 7, 535 P.2d 865 (1975). See generally 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2729 (1983). Plaintiff's excessive speed was a more significant cause of the accident than was the statutory violation at issue in *Williams v Esaw*—the conduct of a 14-year-old boy in riding a motorcycle larger than he was permitted to ride under his restricted driver's license (214 Kan. at 659)—which case demonstrates that the violation of a traffic ordinance does not by itself establish cause.

When the evidence in this case is viewed most favorably to plaintiff, as it must be under the rules governing summary judgment, reasonable persons could differ as to whether plaintiff's excessive speed was a cause of the accident. Defendant stated in her deposition testimony that although she had looked to the north before starting her left turn, she did not see plaintiff until he was right beside her. Viewing this statement most favorably to plaintiff, there is a question of fact as to whether defendant maintained a proper lookout. Furthermore, the deposition testimony most favorable to plaintiff as to the location in the street at which the accident occurred reveals that the de-

fendant had just begun her left turn and was still in plaintiff's lane of traffic at the time of the collision. Such evidence potentially demonstrates a failure to yield the right-of-way on defendant's part. There was evidence to show that if defendant had maintained a proper lookout and yielded the right-of-way, the accident would not have occurred, notwithstanding plaintiff's exceeding the speed limit.

In addition, the trial court's instructing the jury that plaintiff was negligent in speeding and that his speed was a cause of the accident unduly emphasized one aspect of the evidence and had an impact on the jury's decision. As defendant points out, the trial court's instructions did not inform the jury what percentage of fault had to be assessed to plaintiff's negligence, but left the jury free to assess only one percent to that negligence. Yet it seems clear that the jury attached considerable significance to and apparently misconstrued the instructions. During deliberation, the jury members sent a note to the court asking if defendant had been cited for failing to yield the right-of-way, stating they knew plaintiff had been cited for speeding. There is no evidence in the record that plaintiff was cited for a traffic violation and, in fact, no citation was issued. The jury's question reveals it attached considerable importance to the instructions regarding plaintiff's excessive speed. It thus seems the instructions emphasized facts relating to plaintiff's speed over facts relating to defendant's conduct. See *Meyer v. Stone,* 6 Kan. App. 2d 254, 256, 627 P.2d 1155 (1981).

The jury was given PIK Civ. 2d 8.12 which covers speeding. The additional instructions granting partial summary judgment placed such a great emphasis on plaintiff's speed that they were prejudicial to him. In *Meyer v. Stone,* 6 Kan. App. 2d at 256, this court stated that "[a]n incorrect instruction is presumed to be prejudicial unless the contrary is clearly shown, and an erroneous instruction on a material issue requires reversal." Such a result is in order in this case.

The jury clearly felt that defendant failed to yield the right-of-way since it assessed 30 percent of the fault to her. If plaintiff's speed had not been overemphasized, the jury might have ruled in his favor.

We conclude the trial court erred in granting partial summary

judgment to defendant on one of many possible causes of the accident, and that the plaintiff was prejudiced as a result thereof.

Reversed and remanded for a new trial.