No. 61,949

DONALD PHILIP ST. CLAIR, Special Administrator of the Estate of JESSIE MAE ROBESON, Deceased, and DONALD ST. CLAIR, YVONNE GILLAN, and WANDA HARDEN, heirs-at-law of JESSIE MAE ROBESON, Deceased, *Appellees*, v. RUTH DENNY, Special Administrator of the Estate of TOM G. DENNY, Deceased, and MORGAN SUPPLY COMPANY, INC., *Appellants.*

(781 P.2d 1043)

Opinion filed October 27, 1989.

*James P. Nordstrom*, of Fisher, Patterson, Sayler & Smith, of Topeka, argued the cause and was on the brief for appellants.

*Michael C. Helbert*, of Helbert, Bell & Smith, Chartered, of Emporia, argued the cause and was on the briefs for appellees.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is an action brought by the plaintiffs, as special administrator of the estate of Jessie Mae Robeson and her heirs-at-law, against defendants, the special administrator of the estate of Tom G. Denny and the deceased's employer, Morgan Supply Company, Inc. The case arises from an automobile collision in which both drivers were fatally injured. The trial court granted plaintiffs' motion for directed verdict on liability and denied the defendants' motion for directed verdict on plaintiffs' survival claim. The Court of Appeals reversed the trial court in an unpublished opinion filed January 27, 1989. We granted the plaintiffs' petition for review.

Jessie Mae Robeson and Tom Denny were both killed on May 14, 1986, in a two-vehicle collision at the intersection of FAS 152 and FAS 1133 in Coffey County, Kansas. The only survivor of the accident was Robeson's poodle. Robeson was driving her 1984

Oldsmobile Delta 88 southbound on FAS 152, while Denny was driving a 1985 Ford pickup truck, which was owned by his employer, Morgan Supply Co., Inc., eastbound on FAS 1133. The east-west road, FAS 1133, a gravel road, was regulated by stop signs before entering the intersection with FAS 152, a blacktop road that became gravel just south of the intersection. The posted speed limit on both roads was 55 m.p.h.

When both vehicles were approximately 15 feet into the intersection, the right front corner of Robeson's vehicle hit the left front corner of Denny's vehicle. Robeson's vehicle landed 81 feet east and 21 feet south of the point of impact, while Denny's vehicle landed 53 feet east and 55 feet south. Sheriff and highway patrol officers were called to the scene at noon and arrived soon thereafter. When Coffey County Sheriff Earl Freeman arrived, he found Robeson had a weak pulse but made no sounds or signs of consciousness. People interviewed by Sheriff Freeman did not indicate any signs of consciousness by Robeson but did suggest that Denny called out. Denny was dead when Sheriff Freeman checked him. Robeson was dead by the time the physician who signed her death certificate arrived at the scene a few moments later. An investigation of the accident was conducted by a highway patrol officer with the assistance of the undersheriff. The investigation by the officers indicated that Denny failed to stop at the stop sign posted on the road on which he was traveling. The only markings showing reaction by the drivers to the pending collision were approximately 60 feet of yaw marks made by the Robeson vehicle. These marks were created by turning the front tires of her automobile away from the impending accident. The officers found no evidence that Denny attempted to stop.

A vehicle accident reconstructionist called by plaintiffs as an expert witness at trial conducted an energy analysis to determine the amount of energy expended to damage each vehicle and to move each from the point of impact to its final resting place. The witness constructed a scale diagram of the accident site and calculated the speed of each vehicle at the point of impact. This witness testified that, based upon his calculations, Robeson was traveling approximately 37.8 m.p.h. at the time of impact, while Denny was traveling approximately 49.8 m.p.h.

At the conclusion of the evidence, defense counsel moved for

directed verdict on plaintiffs' survival action, arguing that plaintiffs did not provide sufficient evidence to establish that Robeson was conscious after the accident. The trial court denied the motion based upon the presence of the yaw marks that indicated knowledge of impending danger in her attempt to avoid the accident, and based upon testimony that Robeson was alive with a weak pulse following the accident. Plaintiffs' counsel moved for directed verdict on the issue of liability. The court directed a verdict against defendants because no evidence suggested excessive speed on the part of Robeson, no evidence indicated Robeson failed to keep a proper lookout or, if she did, that this was a cause of the accident, and overwhelming evidence established that the cause of the accident was Denny's failure to stop at the stop sign. The jury awarded the administrator of Robeson's estate $70,000 on the survival claim and awarded Robeson's heirs $50,000 for pecuniary damages and $85,000 for nonpecuniary loss.

The defendants appealed to the Court of Appeals, which reversed the trial court. The Court of Appeals concluded that the trial court erred in granting a directed verdict on the issue of liability. Although noting that the evidence indicated Denny ran the stop sign, the Court of Appeals reasoned that it did not necessarily follow that his negligence was the sole cause of the accident. The Court of Appeals concluded that a reasonable person could find that Robeson failed to maintain a proper lookout and otherwise exercise due care under the circumstances. Furthermore, the Court of Appeals found no evidence that Robeson experienced or was capable of experiencing pain and suffering after the moment of impact. Therefore, the Court of Appeals concluded that she was not entitled to recover for post-impact conscious pain and suffering or for preimpact emotional distress. Both decisions reversed by the Court of Appeals are raised in this appeal.

We first turn our attention to the question of whether the trial court erred in directing a verdict on the issue of liability. The rules for determining a directed verdict pursuant to K.S.A. 60-250 have been frequently stated as follows:

"In ruling on a motion for a directed verdict pursuant to K.S.A. 60-250, the trial court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought, and where the evidence is such that reasonable minds could reach different conclusions

thereon, the motion must be denied and the matter submitted to the jury. [Citation omitted.] In reviewing a directed verdict the appellate court will apply the same rule on appeal that was required in the trial court [citation omitted], and if the evidence is such that reasonable minds could reach different conclusions then the verdict should be reversed. [Citation omitted.]" *Baker v. City of Garden City*, 240 Kan. 554, 556, 731 P.2d 278 (1987).

Usually, a determination of the presence or absence of negligence should be left to the trier of fact. Causation, like negligence, is also usually determined by a jury. *Stetler v. Fosha*, 9 Kan. App. 2d 519, 522, 682 P.2d 682, *rev. denied* 236 Kan. 877 (1984). We have noted, however, that "[w]here no evidence is presented on a particular issue, or the evidence presented is undisputed and it is such that the minds of reasonable persons may not draw differing inferences and arrive at opposing conclusions with reason and justice, the matter becomes a question of law for the court's determination." *Sampson v. Hunt*, 233 Kan. 572, 578, 665 P.2d 743 (1983).

In reviewing the testimony given at trial, the Court of Appeals noted that Robeson had an unobstructed view of the intersection and approaching traffic from one-quarter of a mile away. The physical evidence from the accident showed that Robeson did not attempt to avoid the accident until she turned the wheel, producing the yaw marks. The Court of Appeals characterized her attempt to avoid the accident as "too late." The Court of Appeals stated:

"Although there was evidence that Denny ran a stop sign, it does not necessarily follow that his negligence was the sole cause of the collision.' See *Stetler v. Fosha*, 9 Kan. App. 2d at 522. Robeson had a duty to keep a proper lookout even though she had the right of way. See *Jarboe v. Pine*, 189 Kan. 44, 50, 366 P.2d 783 (1961). Robeson had no right to traverse the intersection with undiminished speed merely because her course of travel was protected by the other driver's stop sign. It was her duty to exercise due care under the circumstances. See *Prior v. Best Cabs, Inc.*, 199 Kan. 77, 80, 427 P.2d 481 (1967); *Jarboe v. Pine*, 189 Kan. at 50-51."

The court then concluded that whether Robeson was at fault was a matter for the jury's determination. We do not agree.

In *Stetler v. Fosha*, 9 Kan. App. 2d at 522, the Court of Appeals noted that violation of a traffic ordinance, such as the speeding that occurred in *Stetler*, does not necessarily mean that this conduct caused an accident. Using this analysis, the Court of Appeals here reasoned:

"Robeson had no right to traverse the intersection with undiminished speed merely because her course of travel was protected by the other driver's stop sign. It was her duty to exercise due care under the circumstances. See *Prior v. Best Cabs, Inc.*, 199 Kan. 77, 80, 427 P.2d 481 (1967); *Jarboe v. Pine*, 189 Kan. at 50-51."

The Court of Appeals' reliance upon *Prior* and *Jarboe* is misplaced. The facts in *Jarboe v. Pine*, 189 Kan. 44, 366 P.2d 783 (1961), are distinguishable from the present case. In *Jarboe*, the plaintiff testified that he was driving west through an unregulated intersection when, probably 25 or 30 feet east of the center of the intersection, he looked to the south and saw defendant's vehicle coming toward him to the north. Rather than making any effort to stop or otherwise indicate his presence through the use of a horn, plaintiff proceeded into the intersection and was hit by defendant. The jury specifically found plaintiff contributorily negligent in failing to make any effort to stop after observing the approaching vehicle. This court rejected plaintiff's argument that he had an absolute right to proceed as a favored driver by virtue of his first entry into the intersection and being to the right, noting as follows:

"The driver of a motor vehicle upon a public street or highway, even though he be in law the favored driver, or the driver with the right of way, and even though he has the right to assume others traveling on the public street or highway will comply with the obligation imposed upon them, is not absolved of the consequence of his own independent negligent acts. He is required to regulate his use of the public street or highway by the observance of ordinary care and caution to avoid receiving an injury or inflicting an injury upon another. He has a duty to look ahead and see what there may be within his view which may affect his use of such street or highway and to keep a lookout for other users of such street or highway, and he is in law presumed to have seen and heard that which he could have seen and heard had he kept a proper lookout and exercised ordinary care and caution. His failure to use that degree of care and caution which an ordinarily careful and prudent person would exercise under the same or similar circumstances is negligence as a matter of law." 189 Kan. at 50-51.

This court again dealt with the duty to keep a proper lookout in *Prior v. Best Cabs, Inc.*, 199 Kan. 77, 427 P.2d 481 (1967). The plaintiff in *Prior* was riding his motorcycle north on North Broadway in Wichita at approximately 25 m.p.h. The cab was going east on Ninth Street, which was regulated by a stop sign at Broadway. The driver of the cab noted that he stopped on Ninth Street behind another car, which signaled and then turned south. As the driver of the cab started east across Broadway, the northbound motorcycle hit the right front fender of the cab. The trial

court treated the issue of the motorcycle driver's contributory negligence as a question for the jury. This court noted that, based upon the evidence presented by the record, the trial court would have committed error in directing a verdict of liability for the appellant. "The mere fact that one is traveling on a through highway protected by stop signs on both sides does not give him the right to travel through an intersection with undiminished speed where there is other traffic congesting the intersection." 199 Kan. at 80.

In the present case, Robeson was traveling south on a blacktop road which turned to gravel immediately south of the intersection. She approached an uncongested, rural intersection. The only traffic regulation on her road was a "pavement ends" sign. Denny was traveling east on a rock road with a posted stop sign at the intersection. Testimony at trial indicated that his travel on this rock road would have raised dust. Both parties had an unobstructed view of the intersection and oncoming traffic for approximately one-quarter of a mile. The only evidence at trial of an attempt to avoid the impending collision were the yaw marks made by Robeson's vehicle. These indicate a last-minute effort on her part to avoid the impact.

Defendants argue and the Court of Appeals concluded that a reasonable person could find that Robeson failed to maintain a proper lookout and otherwise exercise due care under the circumstances, making the question of Robeson's fault a matter for the jury's determination. The facts here, however, are distinguishable from the cases relied upon by the Court of Appeals. Unlike *Jarboe*, the evidence here did not show Robeson was aware of Denny's approach to the intersection and failure to stop until the last moment when she attempted to avoid the collision. Unlike *Prior*, the intersection here was not congested and nothing indicates that Robeson had reason to believe that she would need to reduce her speed to avoid a collision. The fact that she had an unobstructed view of the intersection would not support a finding that she failed to keep a proper lookout. There is no evidence that Robeson failed to keep a proper lookout or that, assuming she did not, it was to any degree the proximate cause of the collision.

Proximate cause is a prerequisite for finding liability for negligence. See *Allman v. Holleman*, 233 Kan. 781, 786, 667 P.2d

296 (1983). Proximate cause of an injury is that cause which "in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act." *Wilcheck v. Doonan Truck & Equipment, Inc.*, 220 Kan. 230, 235, 552 P.2d 938 (1976). Although usually the issue of proximate cause is a question of fact for the jury, *Stucky v. Johnson*, 213 Kan. 738, 518 P.2d 937 (1974), it becomes a question of law when all evidence relied upon by a party is undisputed and susceptible of only one inference. *Schenck v. Thompson*, 201 Kan. 608, 612, 443 P.2d 298 (1968). Nothing in the record suggests that Robeson did not keep a proper lookout and, in fact, the record shows that she did attempt to avoid the collision. The evidence shows that her failure to maintain a proper lookout was not the proximate cause of the collision; instead, Denny's failure to stop at the stop sign caused the accident.

Although normally a determination of whether someone failed to keep a proper lookout would involve a question of fact to be decided by the jury, the evidence presented here is undisputed that the cause of this accident was Denny's failure to stop at the posted stop sign. Even viewing the evidence in the light most favorable to the defendants, as this court must do, the minds of reasonable persons could not differ in concluding that the cause of this accident was Denny's failure to stop, not Robeson's failure to keep a proper lookout. Under the facts of this case, the trial court was correct in granting a directed verdict on the question of liability.

We next consider whether the trial court erred in denying defendant's motion for directed verdict on the survival claim. At the close of the presentation of all the evidence, defendants moved for a directed verdict, arguing that plaintiffs presented no evidence indicating that Robeson suffered before her death. Plaintiffs opposed the motion, arguing that it was a question for the jury to determine whether she should receive damages for pain and suffering. Plaintiffs argued that emotional distress can be compensated if physical injury accompanies or follows the emotional distress. The court denied defendants' motion for a directed verdict because the yaw marks indicated that she was aware of the impending accident and because the sheriff tes-

tified that she had a pulse at the time he arrived at the accident. Instruction No. 12 read, in part:

"You should allow the estate such amount of damages as will reasonably compensate it for any pain, suffering, disabilities, or disfigurement, and any accompanying mental anguish suffered by Jessie Mae Robeson prior to her death shown by the evidence to have resulted from the occurrence on the 14th day of May, 1986."

During closing argument, when discussing the damages that the jury could award, the plaintiffs argued: "One [type of damage] is conscious pain and suffering that she had prior to death, which is also the grief and the shock prior to her death." Later, plaintiffs argued: "We are asking that damages be awarded as stated before, for $100,000.00, for the pain, the shock, the mental anguish, the knowledge of impending death, that Jessie Robeson suffered prior to collision and subsequent to it."

Defendants did not object to these statements but, in response, argued: "[C]ounsel suggests that $100,000.00 is a good number for the pre-death situation involving Mrs. Robeson . . . ." Later, defendants argued:

"Instruction Number 12 states you should allow such an amount of damages that will reasonably compensate for the pain, suffering, disabilities, disfigurement, and any accompanying mental anguish which was suffered by Jessie Mae Robeson prior to her death. Let's think about the evidence of those. There is no evidence that any of that occurred. Maybe it did, but nobody knows. Nobody was there to see that."

Finally, in rebuttal plaintiffs argued:

"Defense counsel previously argued that we don't know when the accident occurred or how long those people had been there before they were discovered, and that's right. How long were they there and how can we not say there was not a sign. We know that there was life and that there was [sic] signs of life. What we don't know is the extent of pain and suffering and mental anguish that she was suffering prior to that death. Are we just going to forget that accident?"

The jury awarded $70,000 for the survival claim. The instructions and verdict form do not clarify whether this was awarded for conscious pain and suffering or for preimpact mental anguish, or both.

The Court of Appeals concluded that, because the record contained no evidence of post-impact conscious pain and suffering, the trial court erred in denying the motion for directed verdict on the plaintiffs' survival claim. In reaching its decision, the Court of Appeals stated:

"Viewing the evidence in the light most favorable to the plaintiffs, the record reveals that Robeson was alive for some undetermined period of time after the accident. When observed by others, she was unconscious. There was no evidence that she experienced or that she was capable of experiencing pain and suffering after the moment of impact. There was no evidence indicating that she was responsive to outside stimuli, compare *Fudge v. City of Kansas City*, 239 Kan. 369, 380, 720 P.2d 1093 (1986), or that she uttered any audible words or other sounds indicating she was experiencing pain or suffering. Compare *Ingram v. Howard-Needles-Tammen & Bergendoff*, 234 Kan. 289, 290, 672 P.2d 1083 (1983); *Pape v. Kansas Power & Light Co.*, 231 Kan. 441, 448, 647 P.2d 320 (1982). In the absence of any evidence of post-impact *conscious* pain and suffering, the trial court erred in denying the defendants' motion for directed verdict on plaintiffs' survival claim."

The three cases cited by the Court of Appeals follow the traditional rule in Kansas that one must present evidence of conscious pain and suffering in order to recover damages on a survival claim. We agree that there is no evidence that Robeson was conscious at any time after the accident. No one testified that she responded to any stimuli or made any noises or movement. The sheriff indicated that, when he arrived, Robeson had a pulse but that, to his knowledge, she was not conscious. One of the three people already at the scene told the sheriff that, prior to the sheriff's arrival, the individual in the pickup had been hollering, but did not say Robeson had been. The evidence at trial did not include testimony from the first individuals on the scene but, instead, contained only testimony from the sheriff, undersheriff, state trooper, and coroner. Since there was no evidence that Robeson was conscious, the Court of Appeals was correct in ruling that the trial court erred in denying defendants' motion for directed verdict on plaintiffs' survival claim for damages for postimpact conscious pain and suffering.

The question remains, however, whether damages should have been allowed for preimpact mental anguish. Instruction No. 12 given to the jury in this case, as well as the statements made in closing arguments, allowed damages not just for conscious pain and suffering occurring after the impact, but also for mental anguish suffered prior to Robeson's death.

In *Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, 274, 662 P.2d 1214 (1983), we summarized the current law concerning recovery for emotional distress.

"It has long been the general rule in Kansas that there can be no recovery for emotional distress suffered by the plaintiff which is caused by the negligence of

the defendant unless it is accompanied by or results in physical injury to the plaintiff. [Citations omitted.] This rule, however, does not apply where the injurious conduct is willful or wanton, or the defendant acts with intent to injure."

Plaintiffs here have not alleged that Denny's conduct in running the stop sign was wanton. Wanton conduct is distinguishable from the mere lack of due care involved in negligence because the actor realizes the imminence of injury to others from his acts but takes no steps to prevent the injury.

Kansas cases discussing recovery for emotional distress all appear to involve either prior or contemporaneous physical injury. The question of whether plaintiffs can recover for the emotional distress that Robeson experienced prior to subsequent physical injury, even though the physical injury was not caused by the emotional distress, has not been addressed by the Kansas appellate courts. This issue was, however, examined by the Honorable Earl E. O'Connor in *Fogarty v. Campbell 66 Exp., Inc.*, 640 F. Supp. 953 (D. Kan. 1986). The facts in *Fogarty* are very similar to those presented here and both parties find solace in Judge O'Connor's opinion. Judge O'Connor analyzed Kansas case law that discusses recovery of damages for emotional distress caused by the negligence of the other party, as well as cases from other jurisdictions that discuss preimpact emotional distress. Finding no Kansas authority on point or directly analogous, Judge O'Connor proceeded to predict how this court would decide the question. Reluctantly, he predicted that this court would deny recovery for preimpact emotional distress, but added:

"Our conclusion that the Kansas Supreme Court would refuse to permit recovery for negligently induced, pre-impact emotional distress not itself resulting in physical injury should not be read as an endorsement of the current legal doctrine in this area. A review of the case law in this and other jurisdictions reveals considerable disagreement, as well as more than a little judicial practice of medicine." 640 F. Supp. at 962.

Judge O'Connor then concluded his remarks on the issue with the following comments:

"Under a more modern legal construct, then, it would seem logical to permit plaintiff's claim for pre-impact emotional distress to go to the jury—even if [plaintiff] does fail to prove that [the other driver's] conduct was wanton. At the present time, however, we have no indication that the Kansas Supreme Court is prepared to jettison its recently reaffirmed rules restricting recovery for emotional distress. So long as those rules remain in force, their internal logic requires

that we deny plaintiff's claim for negligently induced, pre-impact emotional distress not itself resulting in physical injury. If those rules are to be discarded, such an announcement should properly come from the Kansas Supreme Court." 640 F. Supp. at 963.

However, we find it is not necessary to test the accuracy of Judge O'Connor's prediction. Since the only evidence to support the plaintiffs' claim for preimpact emotional distress was the 60 feet of yaw marks, the Court of Appeals concluded:

"We are persuaded that plaintiffs are not entitled to recover for pre-impact emotional distress suffered by Robeson. While it is true the physical evidence suggests Robeson may have been aware of a possible collision momentarily prior to impact, that does not support a finding of emotional distress."

We agree, and accordingly the issue of whether plaintiffs can recover for preimpact emotional distress is not reached.

We therefore conclude that the trial court erred in not granting the defendants' motion for a directed verdict in the survival claim. We affirm the directed verdict against defendants on the issue of liability.

The judgment of the district court is affirmed in part and reversed in part. The judgment of the Court of Appeals is affirmed in part and reversed in part.

SIX, J., not participating.