Geneva BURNS, et al., Plaintiffs,

v.

Karen C. BENEDICT, et al., Defendants.

Civ. A. No. 93–2004–JWL.

United States District Court,
D. Kansas.

July 22, 1993.

Jeffrey A. Burns, Shook, Hardy & Bacon, Kansas City, MO, Jeffrey S. Nelson, Shook, Hardy & Bacon, Overland Park, KS, for Geneva Burns and Creg Burns.

James H. Ensz, Ensz and Jester, Kansas City, MO, for Karen C. Benedict.

William P. Coates, Jr., McAnany, Van Cleave & Phillips, P.A., Lenexa, KS, for Lynn M. Adelmund.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

*I. Introduction.*

On July 20, 1993, a trial to the court was held in this case to determine the allocation of fault between the defendants, Karen C. Benedict and Lynn M. Adelmund. Defendant Benedict admits that she failed to yield the right of way and, accordingly, bears some portion of fault for the resulting automobile collision which caused injuries to her passenger, Geneva Burns. However, she adamantly contends that Defendant Adelmund could have avoided the collision if she had not been speeding and had been maintaining a proper lookout. As a result, Defendant Benedict believes that a substantial portion of fault should be assigned to Defendant Adelmund, who, not surprisingly, disagrees.

The court has heard the evidence in this case and has reviewed the papers supplied by the parties. It has examined the exhibits, including the deposition excerpts provided, and has considered the legal authorities proffered.[1] The court concludes that the collision was the result of concurrent causes, Defendant Benedict's failure to yield and Defendant Adelmund's excessive speed, and finds that 75 percent of the fault should be assigned to Defendant Benedict and 25 percent of the fault to Defendant Adelmund based upon the Findings of Fact and Conclusions of Law set forth below.

*II. Findings of Fact.*

1. This case arises out of an automobile collision which occurred on February 14, 1991 between vehicles operated by Defendant Karen C. Benedict and Defendant Lynn M. Adelmund at the intersection of 101st Street and Woodson Street in Overland Park, Johnson County, Kansas.

2. Plaintiff Geneva Burns, a resident of Oklahoma,[2] was a passenger in the automobile operated by Defendant Benedict and she suffered injuries as a result of the collision.

3. The parties have agreed to a settlement of the plaintiffs' claims and have submitted this case to the court for comparison of fault between the defendants.

4. The parties have stipulated that neither plaintiff was causally negligent.

---

**1.** The court did not rely on any of the deposition testimony to which an objection was interposed in reaching its conclusion. It specifically sustains the objection made by Defendant Adelmund at page 94, line 20, that the opinion offered by Plaintiff Burns that the Defendant Adelmund's car was "speeding" was based on conjecture. She offered an opinion based upon matters concerning which she conceded she was not an expert and which involved her attempt to reconstruct the speed based upon collision damage and the like. The court, however, did consider her earlier testimony that Defendant Adelmund's car was "going fast" (see page 45) because she based that on her own observation of the oncoming car and such a description involves a subject on which a lay opinion is admissible under the short hand rendition theory. It is only when she crosses the line to "speeding", implying specific speed in excess of the posted 25 miles per hour, that the court finds her testimony to lack foundation.

**2.** The other plaintiff, her husband, is also an Oklahoma resident.

5. Defendant Benedict was driving her vehicle westbound on 101st Street, searching for a residence to which she was making a delivery for her employer, a florist shop. She was not familiar with the area, did not know to which house she was going and was utterly and totally inattentive to the road as she approached the intersection in question.

6. The intersection was controlled by a "yield-the-right-of-way" traffic sign.

7. Defendant Benedict failed to stop her automobile before entering the intersection or to yield to Defendant Adelmund, who was northbound on Woodson Street.

8. Had Defendant Benedict looked for traffic on northbound Woodson before entering the intersection, she would have observed Defendant Adelmund approaching and could have stopped her vehicle before the two automobiles collided.

9. Defendant Benedict was driving at a relatively constant but, apparently, relatively slow rate of speed as she was looking for her delivery destination. Geneva Burns testified at page 38 of her deposition that the car had "slowed completely down" when it started through the intersection, which is consistent with Defendant Benedict's testimony that her car was in second gear, traveling at between ten and twenty miles per hour. Although Defendant Benedict gave several statements to investigators in which she indicated that she was driving at approximately 25 miles per hour, her trial testimony indicated that she was driving slower than that and that her statements to the investigators had been intended to indicate that she was not exceeding the speed limit. Based upon the Burns testimony, as well as Defendant Benedict's indications about her car being in second gear, the court finds that it is likely that Defendant Benedict was traveling in the 10–20 mile per hour range.

10. Defendant Adelmund observed the Benedict vehicle as it was about the enter the intersection but she did not attempt to slow down or take evasive action until too late, believing that the Benedict vehicle was going to honor the yield sign and stop.

11. Defendant Adelmund was maintaining a proper lookout, and did observe the Benedict vehicle, although she miscalculated Defendant Benedict's subsequent conduct.

12. Defendant Benedict's relatively slow rate of speed probably contributed to Defendant Adelmund's belief that Defendant Benedict was going to honor the yield sign. Defendant Adelmund could have reasonably believed that a car traveling at a rate of 10–20 miles per hour, a rate of speed beneath the speed limit, as it approached the intersection was preparing to stop. She had no reason to anticipate that Defendant Benedict was paying no attention whatsoever to the intersection itself but was going slowly in order to locate a delivery destination.

13. The posted speed limit on Woodson at the time and place of the collision was 25 miles per hour.

14. Defendant Adelmund was unable to express an opinion about how fast she was going at the time she first observed the Benedict vehicle or at anytime before or after the collision. Although she testified that she was not in a hurry, she was not even able to testify that she believed she was traveling within the posted speed limit and it is apparent that she was not monitoring her speed to be sure that it was within the posted limit.

15. At the time that Defendant Adelmund began her braking action upon realizing that Defendant Benedict was not going to honor the yield sign, Defendant Adelmund was exceeding the speed limit. The court bases that conclusion on the testimony of Officer Michael Billquist, an Overland Park police officer who participated in the investigation of the accident and who performed subsequent skid tests in an attempt to reconstruct Defendant Adelmund's speed.

16. Although Officer Billquist acknowledged that ascertaining speed from skid marks is not always totally reliable, and despite the elapse of time between the collision and the follow-up investigation made at the request of Defendant Benedict's counsel, the court finds that the officer's opinion that Defendant Adelmund was exceeding the posted speed limit here is credible. The officer used generally accepted formulas for determining speed based on available data.

The court specifically notes that the test he employed to obtain a coefficient of friction to insert in the formula incorporated substantially similar conditions to those occurring at the time of the collision and went unchallenged by Defendant Adelmund. The court, then, credits Officer Billquist's testimony, that Defendant Adelmund was going "at least" 28.4 miles per hour at the time Defendant Adelmund started her skid.

17. Officer Billquist testified that Defendant Adelmund was traveling "at least" 28.4 miles per hour because the formula employed produces the speed at which a vehicle would be traveling at the beginning of braking action if it had come to rest at the point of impact while, here, the evidence is clear that Defendant Adelmund's vehicle did not stop at the point of impact but, rather, continued on some forty feet into the yard of a house on the northwest corner of the intersection. The court concludes then, that Defendant Adelmund was probably going faster than 28.4 miles per hour when she commenced to brake.

18. Had Defendant Adelmund been traveling at or below the posted speed limit of 25 miles per hour, and had she begun her braking action at exactly the same point that she did here, her car would have stopped short of colliding with the Benedict vehicle. The court bases this conclusion on Officer Billquist's testimony that, under substantially similar circumstances, his vehicle stopped within some 28 feet of the point at which he began braking while, by contrast, the skid marks reveal that Defendant Adelmund's car traveled 35 feet from the point that she made maximum application of her brakes. If she had stopped her car within 28 feet, there would have been no collision.

19. Although Defendant Adelmund did not sound the horn on her vehicle before the collision, the court finds that it was because she was occupied in attempting to take evasive action upon realizing that Defendant Benedict was not going to stop.

20. The collision which injured Geneva Burns could have been avoided had either Defendant Benedict been paying attention to the road and honored the yield sign or had Defendant Adelmund been traveling at a slow enough speed that she could have stopped her car before the collision. The court finds that Defendant Benedict was substantially more at fault, here, however. She was blatantly inattentive, failed to observe either the yield sign or the approaching Adelmund vehicle and created a serious hazard. Defendant Adelmund, on the other hand, was speeding, a fact which cannot be minimized, but even had she been driving within the posted speed limit, she might not have stopped her car in time. That is, although on the given day in question, based on the evidence at hand, it does appear that she could have stopped her car had she applied her foot to the brake at the very moment that she actually did, had she only been traveling no more than 25 miles per hour, nevertheless, if she had applied her foot to the brake only a second later, the collision could still have resulted.[3] Defendant Benedict's failure to yield left little margin for error. Thus, the court feels, it is Defendant Benedict who bears the lion's share of the fault.

*III. Conclusions of Law.*

1. The court has subject matter jurisdiction over this civil action because there is complete diversity of citizenship between the plaintiffs and all of the defendants and because the amount in controversy exceeds $50,000. 28 U.S.C. § 1332.

2. The court has personal jurisdiction over the parties and venue lies in the United States District Court for the District of Kansas.

3. The substantive law of the State of Kansas applies to govern the duties of the parties here.

4. K.S.A. § 8–1528(c) requires every driver approaching a yield sign to slow down or stop so as to yield the right-of-way to any

---

**3.** According to the Distance Traveled in Feet chart of which the court took judicial notice at Defendant Benedict's request, at 25 miles per hour a car will travel 36.7 feet in one second, more than erasing the 7 foot gap that would have resulted here had she been going 25 miles per hour when Defendant Adelmund hit her brakes.

vehicle in or so closely approaching the intersection so as to constitute an immediate hazard if the yielding driver does not slow or stop his vehicle, as is applicable. Defendant Benedict violated this law and thus was negligent per se.

5. It is the duty of the driver of a motor vehicle on a public highway to exercise ordinary care to keep a proper lookout for vehicles and objects in the driver's line of vision which may affect his or her use of the highway. Defendant Benedict failed to do so and was negligent. Defendant Adelmund did maintain a proper lookout.

6. Pursuant to K.S.A. § 8–1560, the speed limit on 101st Street and Woodson Street at their intersection at the time of the collision in question was 25 miles per hour, as established by Overland Park Municipal Code § 12.04.033(d). Defendant Adelmund was exceeding that speed limit at the time she commenced to brake and was negligent per se.

7. Overland Park Municipal Code § 12.04.033(d) provides that the driver of every vehicle shall drive within an appropriately reduced speed when approaching an intersection. Defendant Adelmund did not do so and was negligent.

8. Overland Park Municipal Code § 12.04.174(a) provides that the driver of a motor vehicle shall, when reasonably necessary to insure safe operation, give audible warning with his or her horn. Defendant Adelmund did not sound her horn but the court does not conclude that she violated this ordinance thereby.

9. Proximate cause of an injury is a prerequisite for finding liability for negligence. See *Allman v. Holleman*, 233 Kan. 781, 667 P.2d 296 (1983).

10. The proximate cause of an injury is that cause which "in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act." See *Wilcheck v. Doonan Truck & Equipment, Inc.*, 220 Kan. 230, 235, 552 P.2d 938 (1976).

11. Kansas law recognizes that there may be more than one cause of an injury, that there may be concurrent causes, occurring independently or together, which combined produce an injury. See *Bridges v. Bentley by Bentley*, 244 Kan. 434, 769 P.2d 635 (1989). Defendant Benedict's failure to yield and failure to maintain a proper lookout combined with Defendant Adelmund's excessive speed to cause the collision and produce Geneva Burns's injuries.

13. Pursuant to K.S.A. § 60–258a, each party at fault is liable for that portion of the total dollar amount awarded as damages to a plaintiff in a proportion that the amount of such party's causal fault bears to the amount of the causal fault attributable to all parties against whom recovery is allowed. The court finds that 75 percent of the fault here is attributable to Defendant Benedict and 25 percent of the fault is attributable to Defendant Adelmund.

14. The facts of this case distinguish it from the case of *St. Clair v. Denny*, 245 Kan. 414, 781 P.2d 1043 (1989), on which Defendant Adelmund relies to argue that 100 percent of the fault should be attributed to Defendant Benedict. The difference which the court finds between the two cases is the evidence in this case of Defendant Adelmund's excessive speed and that she could have stopped her vehicle in time to have avoided the collision had she been traveling at the legally posted rate of speed. Those facts did not exist in the *St. Clair* case, in which the Kansas Supreme Court found that any failure by the plaintiff to maintain a proper lookout was not the proximate cause of the collision. Here, the court does find that Defendant Adelmund's excessive speed was a concurrent cause of this collision.

*IV. Conclusion.*

For all of the reasons set forth above, the court finds that 75 percent of the causal fault of the collision in question should be attributed to Defendant Karen C. Benedict and that 25 percent of the causal fault of the collision in question should be attributed to Defendant Lynn M. Adelmund. The court hereby directs counsel for the plaintiff to

prepare a proposed order to be entered consistent with the settlement agreement among the parties, resolving the claims of the plaintiffs and apportioning liability in accordance with this memorandum and order and to submit the same to the court in a form approved by counsel for the defendants no later than August 2, 1993.

**IT IS SO ORDERED.**