NOT DESIGNATED FOR PUBLICATION

No. 123,909

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GLORIA SANCHEZ, Individually and as Special Administrator of
the Estate of Jose Montes, and as Natural Mother of Jose Montes, and
JOSE MONTES SR., Individually and as Natural Father of Jose Montes,
*Appellants*,

v.

ROBERT HEATH TRUCKING, INC. and DON D. JACKSON,
*Appellees*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed March 18, 2022.
Affirmed.

*Michael W. Blanton*, of Gerash Steiner P.C., of Evergreen, Colorado, and *Stuart N. Symmonds*, of
Symmonds & Symmonds, LLC, of Emporia, for appellant Gloria Sanchez.

*Phillip L. Turner*, of Turner Law Office, of Topeka, and *Stanley R. Ausemus*, of Stanley R.
Ausemus Chartered, of Emporia, for appellant/cross-appellant Jose Montes Sr.

*Paul J. Skolaut* and *J. Philip Davidson*, of Hinkle Law Firm LLC, of Wichita, for appellees/cross-
appellees.

Before WARNER, P.J., CLINE, J., and RACHEL L. PICKERING, District Judge, assigned.

PER CURIAM: Appellants are the parents of Jose A. Montes, who was killed in a
motor vehicle accident while walking on Interstate 35 highway (I-35) near Emporia,
Kansas. They sued both the truck driver and his employer, asserting various negligence

1

claims. The district court first granted partial summary judgment against the parents on their damages claims for Montes' pre-impact mental distress and conscious pain and suffering and their claims for negligent supervision and entrustment. The court later entered summary judgment on the parents' remaining negligence claim after finding Montes was the proximate cause of the accident. The court found Montes was in the middle of I-35, with both THC and LSD in his system, and the parents did not establish the truck driver could have reasonably avoided the accident. The parents appeal both decisions. We find the district court appropriately granted summary judgment and affirm.

*The Accident*

In July 2018, around 2 a.m., Montes was struck by a semi tractor-trailer while walking on I-35 near Emporia, Kansas. The semi, which weighed about 77,000 pounds, was traveling around 70 mph at the time of the accident. Montes was without phone, shirt, pants, or shoes when he was struck.

After the accident, the truck driver immediately called 911. Law enforcement arrived within three minutes. The first officer who arrived at the scene found Montes motionless in the middle of the outside lane of the interstate, showing no signs of life. Paramedics observed no vital signs and pronounced Montes dead at the scene. None of the first responders reported any sign that Montes survived the initial collision with the semi, nor did the autopsy report reveal any.

Dr. Altaf Hossain, who performed the autopsy, did not find, within a reasonable degree of medical probability or certainty, any evidence of conscious pain and suffering in his examination of Montes. Dr. Hossain believed Montes lost consciousness and died at the same time.

The toxicology analysis identified a concentration of 6.4 ng/ml of THC and 0.67 ng/ml of LSD in Montes' system. The parties agree the concentration of THC and LSD suggests Montes was impaired at the time of his death.

The truck driver spoke with law enforcement right after the accident. He said he was traveling in the outside lane and looked behind him because he thought he would be passed by another semi. When he looked back to the road, he saw Montes standing in the middle of his lane facing him. He '"yanked"' the wheel towards the inside lane to avoid a collision. The truck driver said Montes moved in the same direction (still facing him), and they collided close to the middle of both lanes. The truck driver felt Montes was trying to intentionally get hit.

The record reveals no explanation for why Montes was on the interstate in the middle of the night, partially naked. His parents contend he attended a party with some friends earlier that evening but left the party alone. Shortly before the collision, Montes sent a Snapchat photo of himself with blood on his head and said he had been jumped.

*The Resulting Litigation*

The parents sued both the truck driver and his employer for negligence. They contend the truck driver's version of events was questionable because he had a criminal record which included crimes of dishonesty. They also contend the record showed that in the past the truck driver texted and watched safety videos on his phone while driving, although they admit there was no evidence to suggest he was texting or watching videos at the time of the accident.

The parents claim if the truck driver was paying attention while driving, he would have seen Montes earlier which would have allowed him more time and distance to try to avoid a collision. They question the truck driver's assertion that he looked behind him

before the accident because surveillance video shows the semi in the rear was more than 900 feet away. They claim it is "unlikely that a vehicle positioned more than 900 feet to the rear would draw the attention of a driver in such a way." The parents also contend the truck driver stopped the semi without braking hard.

The truck driver and his employer moved for partial summary judgment seeking to narrow the issues for trial. They moved to exclude the parents' claim for survival damages as well as their claims for negligent entrustment and negligent supervision for lack of evidence. The district court agreed, finding no evidence suggested Montes suffered any pre-impact distress, any pre-impact injury caused by such distress, or that he consciously experienced pain and suffering. It also noted that in Kansas, a plaintiff can only recover for negligent infliction of emotional distress if the distress independently causes a physical injury. Last, it found no evidence suggested the employer negligently supervised or entrusted the truck driver. The district court granted summary judgment on all three claims.

The truck driver and his employer then successfully moved for summary judgment on the remaining negligence claim. They contended the evidence failed to establish the truck driver acted negligently or that his actions proximately caused the accident. The parents claimed in response that the truck driver did not honk his horn or brake before the collision and that his explanation of the accident made little sense.

The district court found the parents established no negligence by the truck driver that would have contributed to or caused the accident. Instead, the court found Montes' own actions—being in the middle of the interstate, in the middle of the night—were the proximate or legal cause of the accident.

The parents allege the district court erred in dismissing their claim for survival damages and their claim for negligence of the truck driver. They do not appeal the

dismissal of their negligent entrustment and negligent supervision claims. Montes' father also appeals the denial of two motions in limine, but we need not address these issues since we are affirming the dismissal of the case.

*Standard of Review for Summary Judgment*

Because we are reviewing the same evidence and are in the same position as the district court when it decided the summary judgment motions, we apply the same standards on appeal that the district court applied:

> "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling [is] sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case." *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

*Claim for Pre-Impact Distress*

The parents sought damages from the truck driver and his employer for Montes' "pre-impact fright, mental anguish and fear for his life." They acknowledge that Kansas courts have "not yet directly addressed whether Kansas recognizes a claim for pre-impact emotional distress." They argue since the Kansas Supreme Court has not directly rejected such a claim, it is open to considering it. But we need not decide whether Kansas recognizes such a claim because, like in *St. Clair v. Denny*, 245 Kan. 414, 781 P.2d 1043 (1989), the parents failed to establish Montes actually suffered any pre-impact distress.

*St. Clair* involved a fatal automobile collision in which the decedent's estate sought to recover for any pre-impact emotional distress the decedent might have suffered. The Kansas Supreme Court found it unnecessary to determine whether Kansas would recognize such a claim since it found insufficient evidence to support it. The only evidence presented was 60 feet of skid marks made by the decedent. The Supreme Court found our court correctly concluded that while the skid marks suggested the decedent "'may have been aware of a possible collision momentarily prior to impact, that does not support a finding of emotional distress.'" 245 Kan. at 424 (quoting *St. Clair v. Denny*, No. 61,949, unpublished opinion filed January 27, 1989 [Kan. App.]).

Similarly, the district court correctly noted the parents presented no evidence to support a finding that Montes experienced any pre-impact distress. The parents speculate Montes suffered pre-impact distress because Dr. Hossain admitted in his deposition that it was a "possibility" Montes put his hands out before impacting the pavement and after impact with the truck. But mere speculation is insufficient to avoid summary judgment. *Kincaid v. Dess*, 48 Kan. App. 2d 640, 656, 298 P.3d 358 (2013). And like in *St. Clair*, such speculation only suggests Montes was aware of the impending impact—it does not support a finding that he experienced emotional distress because of the impending impact. Further, Dr. Hossain specifically noted he could not say Montes put his hands out in a defensive way, anticipating the impact.

The speculative possibility on which the parents rely in support of this claim is even less indicative of an awareness of impending impact than the skid marks in *St. Clair*. The district court correctly granted summary judgment on this claim.

*Conscious Pain and Suffering*

The parents also sought damages for Montes' "conscious pain and suffering from the time of injury until his death." They claim Dr. Hossain admitted in his deposition that

some of Montes' injuries, such as those on the palms of his hands, could have been defensive wounds from trying to catch himself from hitting the pavement. They point out "Dr. Hossain agreed that Mr. Montes could have been conscious for a period of multiple seconds between the time of the initial impact with the tractor-trailer and the subsequent impact with the pavement."

Again, the parents overstate Dr. Hossain's testimony. Dr. Hossain testified Montes suffered brush abrasions, revealing he was dragged on the concrete at or after impact. When the parents' counsel asked, "Doctor, if someone's being dragged or has their arms out in front of them as they're going forward, would that be a defensive injury?" Dr. Hossain responded that Montes' injuries did not suggest that was what Montes was doing. And when asked if the location of Montes' brush abrasions was significant, Dr. Hossain said, "Yes, it is significant. It tells me he was dragged on the concrete or any other floor or any other place." But he clarified again that he could not say from Montes' injuries that Montes had his arms in front of him defensively. Dr. Hossain said the parents would need other evidence to prove that happened, because he could not say it did, based on the medical evidence.

Dr. Hossain's testimony about the injuries on Montes' palms was similar. He testified those injuries could have occurred from Montes hitting the ground; he could not say they occurred because Montes put his hands down before impact. Dr. Hossain also testified that he did not find, within any degree of medical probability or certainty, any evidence of conscious pain and suffering. He explained, "[I]n general, when you have multiple fracture of the bone and injury to the brain, you will die quickly or immediately. Is it one second, ten seconds, 20 seconds, I cannot answer that."

Acknowledging the lack of direct evidence, the parents attempt to rely on our obligation to resolve all reasonable inferences drawn from the evidence in their favor. But Kansas courts have made it clear that "'an inference cannot be based upon evidence

7

which is too uncertain or speculative or which raises merely a conjecture or possibility.'" *Deters v. Nemaha-Marshall Electric Cooperative Ass'n*, 56 Kan. App. 2d 1170, 1185, 443 P.3d 1086 (2019) (quoting *Seitz v. Lawrence Bank*, 36 Kan. App. 2d 283, 289, 138 P.3d 388 [2006]). The parents' evidence of conscious pain and suffering, even when examined in a light most favorable to them, amounts to no more than mere conjecture or possibility. There is no real evidence Montes was conscious enough to experience any pain or suffering after impact with the semi. At best, Dr. Hossain admitted the parents' posited scenario was one of a wide range of possible scenarios. But he also pointed out the medical evidence did not support it. And he said it was just as easily possible that Montes lost consciousness and died without suffering any conscious distress. The district court correctly granted summary judgment on this claim as well.

*Negligence Claim*

Last, the parents argue the district court erred when it found the truck driver was not legally liable for the accident because Montes was in the middle of the road when it occurred—essentially finding Montes was the "proximate cause" for the accident.

Proximate cause is a legal term, meaning "the cause that 'in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act.'" *Burnette v. Eubanks*, 308 Kan. 838, 842, 425 P.3d 343 (2018) (quoting *Yount v. Deibert*, 282 Kan. 619, 624-25, 147 P.3d 1065 [2006]). It has two components: causation in fact and legal causation. *Burnette*, 308 Kan. at 846. Cause in fact requires a plaintiff to prove a cause-and-effect relationship between the defendant's conduct or actions and the plaintiff's loss. The plaintiff must show that it was "'more likely than not, but for defendant's conduct, the plaintiff's injuries would not have occurred.'" 308 Kan. at 846 (quoting *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 623, 345 P.3d 281 [2015]). Legal causation requires the plaintiff to show that it was

8

"'foreseeable that the defendant's conduct might create a risk of harm to the victim and that the result of that conduct and contributing causes was foreseeable.'" *Burnette*, 308 Kan. at 846 (quoting *Droudhard-Nordhus*, 301 Kan. at 623).

Generally, proximate cause is a factual question resolved by the trier of fact (normally, a jury). But it becomes a question of law when all the evidence on which a party relies is undisputed and only one reasonable inference can be made. *Burnette*, 308 Kan. at 846.

The parents rely heavily on testimony and a report from their expert witness, Steven Christofferson, who said the truck driver should have seen Montes earlier and, if he had, he would have been able to slow down and avoid the collision. This theory is based upon Christofferson's description of the accident scene: "[T]he flat/straight approach of the IH-35 roadway in the area, the illumination provided by [the truck driver's] headlights[,] the streetlighting in the area, and the clear and unfettered distance of nearly 1/4 mile between his truck and the one in front of him."

The problem with this theory is it is simply too speculative to establish a genuine issue of material fact because it ignores crucial information—the actions of the two actors involved. There is no evidence of anything the truck driver did to cause the accident. And there is no conclusive evidence of anything he could have done to avoid it. As the district court noted, Montes was "in the middle of the highway, in the middle of the night." While the parents argue the truck driver could have honked his horn or tried to swerve, the district court pointed out they failed to establish either of these actions would have made a difference.

The truck driver also correctly points out there is no evidence about the time he had to perceive and react to Montes. Neither Christofferson nor anyone else (if you discount the truck driver's version of events, as the parents ask us to do) have any

9

evidence as to the position of Montes' body at the point he was first able to be seen on the interstate or at any time before impact. This evidence is crucial to the reasonableness of the inferences the parents asked the district court (and us) to draw.

While the parents are concerned the district court's decision gives carte blanche to drivers to run over pedestrians with impunity, this is a strained interpretation. The district court simply and appropriately found the parents failed to provide sufficient evidence that the truck driver created a risk of harm to Montes or could have done anything to avoid Montes' injuries. Under the circumstances, we agree. As with the survival damages claims, we find the district court properly granted summary judgment on the negligence claim.

*Conclusion*

Admittedly, summary judgment is uncommon in negligence actions because they usually involve very fact intensive situations. And under our justice system, judges decide the legal disputes and juries decide the factual ones. But the parents did not present a genuine factual dispute for a jury to decide. Instead, they offer mere speculation and conjecture about what Montes possibly may have felt and what the truck driver possibly may have done. While we may draw inferences from the facts (which we must draw in the parents' favor), those inferences must have sufficient factual support to be reasonable. Here, the inferences the parents ask us to draw are unreasonable because they lack sufficient factual support.

Many courts (including our Kansas Supreme Court) have repeated the United States Supreme Court's observation that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). We find that is exactly what the district court did here and therefore we affirm.

10

Affirmed.