**Janice L. COCHRANE, et al., Plaintiffs,**

v.

**SCHNEIDER NATIONAL CARRIERS, INC., Defendant.**

**No. 96–2342–JWL.**

United States District Court, D. Kansas.

June 30, 1997.

James W. Jeans, Kansas City, MO, James W. Jeans, Sr., for Janice L. Cochrane.

James W. Jeans, Kansas City, MO, for Patrick Cochrane.

James W. Jeans, Sr., Platte City, MO, for Peter A. Cochrane.

R. Denise Henning, Richard E. McLeod, McLeod Law Firm, Kansas City, MO, for Schneider National Carriers, Inc.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This action, which resulted from a fatal car accident, involves wrongful death and survival claims. The matter is presently before the court on defendant's motion for partial summary judgment on plaintiff administrator's claim for damages (Doc. 41). The issue is whether that plaintiff may recover damages for pain and suffering or for mental anguish. For the reasons set forth below, the court grants the motion, and plaintiff administrator's claims for non-pecuniary damages are hereby dismissed.

### I. Facts

Decedent Peter Cochrane died as the result of an accident that occurred on January 17, 1996. Decedent was driving on a Kansas state highway when his car collided with a tractor-trailer owned by defendant. Defendant's driver testified that she heard decedent's brakes squeal before the impact. Upon impact, decedent's vehicle became wedged under the truck; the top of the car was sheared off.

Decedent's body was discovered slumped over across the front seat of his car. According to medical records, decedent's face and neck bones were intact; his injuries were to the occipital area of his head. After the collision, bystanders Ronald Nold and Judi Price appeared at the scene and attempted to revive decedent with rescue breathing. Mr. Nold, a medical student, testified that he found decedent unconscious; decedent had a pulse, but he was not breathing and did not make any sounds. Mr. Nold also testified that decedent never regained consciousness before he was taken away by emergency personnel. Ms. Price, a physician's assistant in orthopedic surgery, also testified that she found decedent with a pulse but not breath-

ing, and that decedent was unconscious and did not regain consciousness before he was removed to the hospital.

The report of the emergency personnel who examined decedent at the scene of the accident indicated no response by decedent in each of the response categories of eye opening, verbal response, and motor response; the same was reported by the emergency helicopter service that transported decedent to the hospital. The discharge summary from the hospital indicated that upon admission decedent was unconscious and "unresponsive to any painful stimuli." The summary further stated that decedent remained "deeply comatose" the next morning. The hospital's records also contain handwritten entries, made during the night of January 17 and the following morning, that appear to read variously as follows: (1) "flaccid to pain except curls big toe under slightly;" (2) "Still curls toes (large one only) under to pain to bottom of feet;" (3) "Still curls great toes under;" (4) "Legs w/d hyperflexive to touch;" (5) "No response to pain [indistinguishable] except w/d leg in hyperflexive way;" (6) "+ knee jerk when feet touched;" and (7) "There is a slight withdrawal of toes to pain."

Decedent died from his injuries on the morning of January 18, 1996. On March 21, 1997, decedent's parents instituted the instant action. Plaintiffs brought a wrongful death claim on their own behalf as well as a survival claim on behalf of decedent's estate.

## II. Summary Judgment Standard

When considering a motion for summary judgment, the court must examine all of the evidence in the light most favorable to the nonmoving party. *Jones v. Unisys Corp.,* 54 F.3d 624, 628 (10th Cir.1995). A moving party that also bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anglemyer v. Hamilton County Hosp.,* 58 F.3d 533, 536 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,*

477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed. R.Civ.P. 1).

## III. Discussion

### A. Pre-Impact Emotional Distress

■ Plaintiffs argue that an issue of fact remains for trial concerning decedent's suffering damages for emotional distress prior to his impact with defendant's vehicle. In support of such claim, plaintiffs have submitted evidence suggesting that decedent braked and ducked down in his seat before the collision. The court need not decide whether such evidence is sufficient to support an inference that decedent suffered emotional distress before impact, however, because it concludes that, under Kansas law, damages may not be recovered for pre-impact emotional distress in a case of this type.

■ Judge O'Connor of this court (and formerly of the Kansas Supreme Court) reached that conclusion after considering the issue in *Fogarty v. Campbell 66 Express, Inc.,* 640 F.Supp. 953 (D.Kan.1986). In *Fogarty,* the court first set forth the Kansas Supreme Court's summary of the law concerning recovery for emotional distress:

It has long been the general rule in Kansas that there can be no recovery for emotional distress suffered by the plaintiff which is caused by the negligence of the defendant

unless it is *accompanied by or results in* physical injury to the plaintiff.

*Id.* at 956 (emphasis added in *Fogarty*) (quoting *Hoard v. Shawnee Mission Med. Ctr.*, 233 Kan. 267, 274, 662 P.2d 1214 (1983)).[1] The court noted that such had been the standard in Kansas for emotional distress damages since 1916. *Id.* (citing *Whitsel v. Watts*, 98 Kan. 508, 509, 159 P. 401 (1916)). The court then considered the plaintiff's argument that "accompanied by" in the standard includes "instances in which physical injury occurs after, and yet not as a result of emotional distress." *Id.*

The court could find no Kansas decision involving "*subsequent* physical injury not actually caused by the emotional distress;" instead, the cases all involved either prior or contemporaneous physical injury. *Id.* at 956–57. Thus, because there was no Kansas authority directly on point or even directly analogous concerning "whether a decedent's estate may recover for negligently induced, pre-impact emotional distress not itself resulting in physical injury," the court was forced to predict how the Kansas Supreme Court would answer the question. *Id.* at 957.

The court proceeded to conduct an exhaustive analysis. The court concluded that the Kansas rule appeared the functional equivalent of that enunciated in the Restatement. *Id.* (citing Restatement (Second) of Torts § 436A). The court expressed doubt that the Kansas Supreme Court would adopt the construction urged by the plaintiff in that case unless it was convinced that the policy reasons set forth in the Restatement were no longer valid. *Id.* at 958. After reviewing a number of cases, however, the court rejected the plaintiff's claim:

> Having canvassed the relevant decisions from other jurisdictions, we have found no court that has cogently explained why the Restatement factors ought now to be discounted. In Kansas, where the impact rule has been rather strictly construed, this lack of contrary analysis is especially important. Moreover, our conclusion that Kansas law would not permit plaintiff to

recover for decedent's pre-impact emotional distress is further buttressed by the Kansas Supreme Court's stringent attitude toward claims for *intentional* infliction of emotional distress (the tort of outrage). *Id.* at 961–62.

The court seemed to reach its conclusion reluctantly:

> Our conclusion that the Kansas Supreme Court would refuse to permit recovery for negligently induced, pre-impact emotional distress not itself resulting in physical injury should not be read as an endorsement of the current legal doctrine in this area.

*Id.* at 962. The court stated that it would be logical to hold a negligent defendant liable for any provable emotional distress. *Id.* at 963. Nonetheless, the court subjugated it own philosophy to a proper application of Kansas law as the Kansas Supreme Court would determine it:

> At the present time, however, we have no indication that the Kansas Supreme Court is prepared to jettison its recently reaffirmed rules restricting recovery for emotional distress. So long as those rules remain in force, their internal logic requires that we deny plaintiff's claim for negligently induced, pre-impact emotional distress not itself resulting in physical injury. If those rules are to be discarded, such an announcement should properly come from the Kansas Supreme Court.

*Id.*

Kansas courts have not weighed in on the issue since *Fogarty* was decided. The Kansas Supreme Court passed up an opportunity to address the question in *St. Clair v. Denny*, 245 Kan. 414, 781 P.2d 1043 (1989). After setting forth the general standard for emotional distress recovery from *Hoard*, the court framed the issue:

> Kansas cases discussing recovery for emotional distress all appear to involve either prior or contemporaneous physical injury. The question of whether plaintiffs can recover for the emotional distress that [the decedent] experienced prior to subse-

---

1. This rule does not apply where the defendant has acted willfully, wantonly, or with an intent to injure. *Fogarty*, 640 F.Supp. at 956 (quoting

*Hoard*, 233 Kan. at 274, 662 P.2d 1214). Plaintiffs have not alleged such conduct in this action, however.

quent physical injury, even though the physical injury was not caused by the emotional distress, has not been addressed by the Kansas appellate courts.

*Id.* at 422–23, 781 P.2d 1043. The court then reviewed *Fogarty,* noting that Judge O'Connor had reluctantly predicted that the Kansas Supreme Court would deny recovery for pre-impact emotional distress. *Id.* at 423–24, 781 P.2d 1043 (quoting *Fogarty,* 640 F.Supp. at 962–63). The court declined to reach the issue and "test the accuracy of Judge O'Connor's prediction," concluding that the evidence of pre-impact emotional distress in that case was insufficient at any rate. *Id.* at 424, 781 P.2d 1043.[2]

In the absence of contrary Kansas authority, the court adopts the extremely well-reasoned opinion by Judge O'Connor in *Fogarty.* For the reasons stated in that case, the court believes that the Kansas Supreme Court would not at this time recognize plaintiffs' claim for damages for negligently induced, pre-impact emotional distress. Accordingly, partial summary judgment is appropriate in favor of defendant on that claim.

### B. *Post-Impact Conscious Pain and Suffering*

 The court also concludes that plaintiffs have failed to present evidence of post-impact conscious pain and suffering or mental anguish by decedent sufficient to preclude summary judgment on any such claim for damages. "Kansas generally follows the majority rule that damages are recoverable only for pain and suffering which is consciously experienced." *Leiker v. Gafford,* 245 Kan. 325, 342, 778 P.2d 823 (1989); *accord Nichols v. Marshall,* 486 F.2d 791, 793 (10th Cir. 1973) (applying Kansas law); *Sullivan v. United States Gypsum Co.,* 862 F.Supp. 317, 320 (D.Kan.1994); *Gregory v. Carey,* 246 Kan. 504, 509, 791 P.2d 1329 (1990); *St. Clair,* 245 Kan. at 422, 781 P.2d 1043; *see also Barnes v. Robison,* 712 F.Supp. 873, 875 (D.Kan.1989) (post-impact mental anguish must also be consciously experienced); *Fogarty,* 640 F.Supp. at 963–64 (applying Kan-

sas rule to require consciousness for claim for damages for post-impact emotional distress).

Plaintiffs must therefore show that decedent was conscious at some time after the impact. On this point, plaintiffs have provided only the various entries in the hospital records noted above. The court concludes, however, that such evidence is not sufficient to raise the necessary inference of consciousness.

Plaintiffs' evidence is problematic in a number of respects. The entries are not easily and entirely legible. The entries contain symbols, abbreviations, and at least one medical term. The entries' probative value is thus severely undermined by the absence of any testimony or affidavits interpreting and explaining the entries. Nevertheless, viewing the evidence and resolving all inferences in plaintiffs' favor, as it must at this stage of the proceedings, the court assumes for purposes of this motion that the cited record entries do in fact state what plaintiffs maintain they state—that decedent moved his toes or legs in response to "pain" or "touch".

That evidence does not preclude summary judgment here, however, because it does not speak to the critical issue—whether plaintiff was conscious. The entries describe actions in response to physical stimuli. There is nothing to suggest, however, that the actions described went beyond involuntary muscle responses that might occur when certain nerves are pressed. There is no testimony or other evidence concerning the meaning of "pain" as that word is used in the entries; nor is there evidence, by deposition or affidavit, linking decedent's movements to *conscious* pain. Thus, the entries in the medical records, by themselves, do not imply consciousness.

The court may readily distinguish the Kansas cases in which plaintiffs were found to have submitted sufficient evidence of consciousness. In *Smith v. Printup,* 254 Kan. 315, 866 P.2d 985 (1993), for example, a

---

**2.** Because the court in *St. Clair* expressly refused to consider the issue, plaintiffs' argument that the court in that case tacitly accepted Judge

O'Connor's philosophical support for pre-impact emotional distress recovery is not well-taken.

witness testified "that [the decedent] was breathing erratically and that he appeared to respond with a two-syllable sound and body movement to [the witness's] statement that help was on its way." *Id.* at 358, 866 P.2d 985. In *Gregory,* videotape evidence and lay testimony were buttressed by expert medical testimony that the plaintiff's moans and sighs in reaction to pin pricks were not purely reflexive and suggested appreciated pain. 246 Kan. at 510, 791 P.2d 1329. In *Leiker,* there was testimony that the plaintiff consistently opened her eyes when her named was called, flinched and vocalized in response to painful stimuli, frequently smiled when spoken to and in response to pleasant discussions, and exhibited a startled reaction in response to sudden noises or unexpected touches. 245 Kan. at 345, 778 P.2d 823. In *Folks v. Kansas Power & Light Co.,* 243 Kan. 57, 755 P.2d 1319 (1988), a police officer testified that the decedent had appeared to be conscious and had been breathing and making noises. *Id.* at 69, 755 P.2d 1319. In *Pape v. Kansas Power & Light Co.,* 231 Kan. 441, 647 P.2d 320 (1982), the decedent had audibly moaned and squeezed his wife's hand in response to her request to squeeze if he understood her. *Id.* at 448, 647 P.2d 320. Finally, in *Nichols,* there was evidence of bodily motion, sounds, and a toe wriggled in response to a request. 486 F.2d at 793. Unlike the present action, these cases involved either evidence of movements or sounds in specific response to requests or other statements, or expert medical testimony specifically tracing the person's movements to conscious pain.

Plaintiffs rely most heavily on *Fudge v. City of Kansas City,* 239 Kan. 369, 720 P.2d 1093 (1986). In *Fudge,* the court upheld a jury award of nonpecuniary damages even though the evidence of consciousness consisted solely of testimony by the decedent's mother-in-law that the decedent had squeezed her fingers on a few occasions after the accident in response to statements about his children. *Id.* at 380, 720 P.2d 1093. Plaintiffs argue that if such lay testimony was sufficient in *Fudge,* their medical evidence should raise a question of fact concerning consciousness in this case. The court rejects this argument. The decedent's

actions in *Fudge* were in response to verbal stimuli, and one could reasonably infer from them an attempt to communicate, or at least to acknowledge communications, about his children. Because one could conclude that the actions were not merely reflexive or involuntary, they raise an inference of consciousness. In this way, *Fudge* is like the other cases set out above, which all contained evidence of movements, sounds, or reactions that were not involuntary. In the present case, however, plaintiffs have failed to come forward with any evidence, medical or lay, by which a reasonable jury could infer consciousness from decedent's leg and toe movements. Accordingly, under Kansas law, defendant is entitled to partial summary judgment on plaintiffs' claim for non-pecuniary damages with respect to the survival action.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for partial summary judgment (Doc. 41) is granted, and plaintiff administrator's claims for damages for pain and suffering and for mental anguish are hereby dismissed.

**IT IS SO ORDERED.**