Sara LIVINGSTON, et al., Appellant–
Respondents,

v.

BAXTER HEALTH CARE CORPORA-
TION, Respondent–Appellant.

Nos. WD 71257, WD 71312.

Missouri Court of Appeals,
Western District.

June 22, 2010.

Robert W. Tormohlen, for Appellant–Respondent.

Paul P. Hasty, Jr., for Respondent–Appellant.

Before Division Two: MARK D. PFEIFFER, Presiding Judge, VICTOR C. HOWARD, Judge and ALOK AHUJA, Judge.

VICTOR C. HOWARD, Judge.

The heirs of Ruth Baxter appeal the trial court's judgment upon a jury verdict awarding them a total of $500,000 on their wrongful death and pain and suffering claims against Baxter Health Care Corporation ("BHCC"). They claim that the trial court erred in: (1) applying Kansas's statutory limits on non-economic damages; and (2) denying the heirs' motion for judgment notwithstanding the verdict because BHCC failed to make a submissible case of comparative fault. BHCC also appeals the judgment and contends that the trial court erred in: (1) refusing to modify the jury instruction on the claim for pain and suffering; and (2) denying its motion for a directed verdict on the pain and suffering claim. The judgment of the trial court is affirmed.

**Factual and Procedural Background**

Ruth Baxter ("Decedent") died on August 17, 2006, after being involved in a car accident with Deborah Beal, an employee of BHCC who was acting in the scope of her employment at the time of the accident. Decedent's heirs brought a wrongful death claim against BHCC, and the administrator of Decedent's estate brought an action against BHCC to recover damages for pain and suffering experienced by Decedent.[1]

---

1. The heirs involved in the case are Decedent's children, Sara Livingston, James Bax-
ter, and Jane Baxter Jones, and Decedent's grandchildren, Matthew Lloyd and Kristin

According to the evidence presented at trial, the accident occurred at approximately 2:30 p.m. on Interstate I–35 near Ottawa, Kansas. Beal was driving a Chrysler 300 and Decedent was driving a Volkswagen Golf. Beal was traveling north in the right hand lane of I–35 when she rear-ended Baxter's vehicle. The occupants of the vehicle traveling behind Beal, Austin Souto and his mother Wendy Taylor, saw the collision occur. Souto saw Decedent's vehicle burst into flames as it was spinning after the collision. Souto and Taylor pulled over to the side of the road to check on Beal, who was still in her vehicle, but were unable to get close to Decedent's vehicle because of the fire.

As a result of the collision, the front end of Beal's car was damaged, and Beal suffered a broken nose and abrasions on her knees and forehead. The rear end of Decedent's vehicle was damaged, but the driver's compartment was not damaged by the impact. An autopsy showed that Decedent suffered a broken arm and that she had inhaled smoke after the impact. Therefore, Dr. Erik Mitchell, who performed the autopsy, determined that Decedent had survived the initial impact but had died as a result of burns.[2] Dr. Mitchell's autopsy also revealed that there was no evidence that Decedent sustained a skull fracture or bleeding in the brain, but he noted that he could not medically determine whether or not Decedent was conscious between the time of the impact and the time of her death.

On December 8, 2008, Heirs filed their fourth amended petition alleging a cause of action for wrongful death against BHCC due to its employee's negligence. Heirs also filed a survival claim against BHCC to recover damages on behalf of Decedent's estate for pain and suffering experienced by Decedent as a result of Beal's negligence. Before trial, Heirs filed a motion for partial summary judgment requesting a ruling that Missouri law controlled the case. The trial court disagreed and indicated that Kansas law would govern the case. Heirs later filed a motion to reconsider their motion for partial summary judgment, arguing that while Kansas substantive law may control some of the issues in the case, Missouri law should control the amount of damages Heirs could recover. The trial court denied the motion.

At trial, BHCC objected to Heirs' proposed jury instruction for the pain and suffering claim, arguing that the instruction did not inform the jury that it must find that Decedent was conscious in order to award damages. BHCC also moved for a directed verdict on the claim because Heirs had not presented evidence that Decedent was conscious between the time of the impact and her death. The trial court overruled BHCC's objection and motion and submitted Heirs' instruction to the jury. Based on BHCC's argument that Decedent was either stopped or driving below the legal minimum speed limit, an instruction on comparative negligence was also submitted to the jury.

The jury returned verdicts in favor of Heirs, awarding $450,000 in non-economic damages on the wrongful death claim and $750,000 in non-economic damages for the pain and suffering claim. The jury as-

Lloyd. Although the heirs brought the wrongful death claim, and the pain and suffering claim was brought in the name of Decedent's estate, for the sake of simplicity, appellants will be referred to collectively as "Heirs."

2. At trial, Dr. Mitchell testified that Decedent's death was probably not directly related to the inhalation of carbon monoxide but was, rather, more likely caused by burns from the fire.

sessed twenty percent of the fault to Decedent and eighty percent to Beal. Because Kansas statutory law limits non-economic damages to $250,000 for wrongful death claims and personal injury survival claims, the trial court reduced both awards to $250,000. Heirs filed a motion for judgment notwithstanding the verdict ("JNOV") in which they contended that BHCC had failed to make a submissible case of comparative fault and that the trial court erred in applying Kansas law to limit Heirs' non-economic damages. The trial court denied Heirs' motion. This appeal by Heirs and BHCC followed.

## Choice of Law

■ We address first the issue of whether Missouri law or Kansas law applies to the measure of Heirs' damages. A forum state will choose the applicable law according to its own conflict of law principles. *Moore ex rel. Moore v. Bi–State Dev. Agency,* 87 S.W.3d 279, 285 (Mo.App. E.D.2002). When determining which state's law applies to a tort action generally, Missouri courts apply the "most significant relationship" test set out in section 145 of the Restatement (Second) of Conflict of Laws. *Id.* Section 145 states:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971).

■ Section 175 of the Restatement (Second) of Conflict of Laws pertains specifically to wrongful death actions and provides that the law of the state where the injury occurred will apply to determine the rights and liabilities of the parties "unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in [section] 6 to the occurrence and the parties, in which event the local law of the other state will be applied." [3] It is not solely the number of contacts which determines the choice of law but which state, "when those contacts are considered in the perspective of Restatement (Second) [section] 6 choice of law principles ... has the most significant relationship to the occurrence and parties, and so is entitled to have its law determine the particular issue." *Nelson v. Hall,* 684 S.W.2d 350, 360 (Mo.App. W.D. 1984). The choice of law principles under section 6 are:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

---

**3.** Section 178 provides that "[t]he law selected by application of the rule of § 175 determines the measure of damages in an action for wrongful death." *See also State ex rel. Broglin v. Nangle,* 510 S.W.2d 699, 701–02 (Mo. banc 1974).

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2) (1971).

■ BHCC contends that section 175 of the Restatement (Second) of Conflict of Laws mandates the application of the law of the state where the accident occurred, absent exceptional circumstances. BHCC misconstrues section 175 in its argument. This court has concluded that the text, comments, and notes in both sections 145 and 175 "impress the general rule, subject only to rare exceptions, the local law of the state where conduct and injury occur will apply to determine 'whether the actor satisfied minimum standards of acceptable conduct and whether the interest affected by the actor's conduct was entitled to legal protection.'" *Nelson*, 684 S.W.2d at 356 (quoting Restatement (Second) of Conflict of Laws § 145 cmt. d). Therefore, absent exceptional circumstances, the law of the state where the conduct and injury occurred will apply to determine whether a cause of action for wrongful death accrued at all from the conduct and whether the actor met that state's applicable standard of care. *See id.* at 359.

If Heirs were contending that the relevant causes of action accrued in Missouri or that Missouri's standard of conduct should apply, section 175 would require them to demonstrate that exceptional circumstances existed which warranted the application of Missouri law, rather than Kansas law. However, Heirs do not contest the trial court's application of Kansas law regarding the substantive issues of the case, i.e., whether a cause of action accrued at all and whether Beal or Decedent violated Kansas's applicable standard of care. Instead, Heirs assert that Missouri has a superior interest in having its law apply to the issue of damages. In this regard, this court has readily recognized that choice of law questions are determined on an issue-by-issue basis and that "the state where the tort was committed may not be the state with the superior interest in such an issue as the amount of damages a jury may return on the cause of action." *Id.* at 352. As to such issues, sections 175 and 178 provide not a presumption to be overcome by a showing of exceptional circumstances but, rather, provide a default rule where, all things being equal, the law of the state where the injury occurred will apply. However, where another state has a more significant relationship to the occurrence and the parties, the law of that state will apply to the issue. Therefore, the choice of law determination in this case turns on whether Missouri, under the principles stated in section 6 of the Restatement, has a more significant relationship to the occurrence and the parties with respect to the particular issue of damages.

■ Heirs contend that the trial court erred in applying the Kansas statutory limits on non-economic damages because Missouri, which does not impose limitations on non-economic damages recoverable for the types of claims pursued by Heirs, has a more significant relationship to the occurrence and parties than Kansas with regard to damages. Although the accident and death occurred in Kansas, Heirs note that Missouri has the following contacts with the occurrence and parties: both drivers were Missouri residents; both vehicles involved in the accident were titled and garaged in Missouri; and Decedent's estate was opened in Missouri. In addition, Heirs argue that Missouri has a

strong interest in compensating the family of a Missouri decedent in a Missouri court in accordance with its law on damages.

In light of the section 6 choice of law principles relevant to this case, we look to the policies of Missouri which underlie its laws on damages. Missouri law, unlike Kansas law, does not place a strict cap on the amount of non-economic damages recoverable for the wrongful death and pain and suffering of a decedent. *See* § 537.090, RSMo Cum.Supp.2009. As recognized in *Carver v. Schafer,* 647 S.W.2d 570 (Mo.App. E.D.1983),

> The policies behind allowing a full measure of recovery are three fold. One policy is to provide for the economic well-being of the decedent's dependents so that they will not become wards of the state. A second policy is to provide funds with which to pay creditors of the decedent. A third policy furthered by allowing unrestricted judgments for wrongful death is to promote the admonitory effect such judgments would have on potentially negligent defendants.

*Id.* at 577. Although Heirs claim that Missouri's policies will be impaired if its damages law is not applied, the evidence presented in this case does not indicate that the policies identified in *Carver* will be impaired. As none of the plaintiffs are residents of Missouri, there is no danger that they will become wards of the state of Missouri. With regard to the second policy identified, the parties did not adduce evidence at trial regarding Decedent's creditors. As to the third policy, Missouri has an interest in promoting an admonitory effect on negligent defendants in that BHCC conducts business in Mis-

souri; that interest is diminished here, where the injury-causing conduct occurred in another state. However, because BHCC also conducts business in Kansas, Kansas arguably has an interest in having its statutory cap applied in order to protect a corporation doing business in Kansas from an excessive jury verdict.[4] Because BHCC conducts business in both Kansas and Missouri, thereby giving both states an interest in having its damages law apply, we cannot say that Missouri has a more significant relationship to the issue of damages on the basis that BHCC conducts business in Missouri.

The evidence demonstrates that Missouri has very limited contacts with the parties to the case. Heirs note that both drivers were Missouri residents and that both vehicles involved in the accident were titled and garaged in Missouri. The fact that the vehicles were titled and garaged in Missouri does not bolster Heirs' argument that Missouri has a stronger interest than Kansas as to non-economic damages, an issue which is relevant to the parties, not the property which was involved in the accident. Furthermore, the fact that both drivers were Missouri residents has little bearing on the issue of Missouri's relationship to the parties' compensation where neither Missouri resident is a party to the case.[5]

Finally, Heirs argue that Missouri has an interest in compensating the family of a Missouri decedent in a Missouri court in accordance with its law on damages. In support of this claim, Heirs cite *Hicks v. Graves Truck Lines, Inc.,* 707 S.W.2d 439 (Mo.App. W.D.1986). In analyzing whether Missouri law, rather than Kansas law,

---

4. Courts examining Kansas's statutory limitation on non-economic damages have noted that "[t]he $250,000 cap is designed to prevent juries from awarding excessive damages out of sympathy for a decedent's family."

*See, e.g., Estate of Sisk v. Manzanares,* 270 F.Supp.2d 1265, 1278 (D.Kan.2003)

5. While Beal was initially a named defendant, she was later dismissed from the case.

should apply to determine the comparative fault of the parties, the court in *Hicks* concluded that Missouri's interest in having its law applied stemmed from "a policy of compensating Missouri residents in the courts of this state in the manner which this state's laws have declared." *Id.* at 442. However, Heirs are not Missouri residents.[6] Heirs point out that Decedent's estate was opened in Missouri, but an estate is not a natural or artificial person, or a recognized legal entity. *See Estate of Munzert*, 887 S.W.2d 764, 766 (Mo. App. E.D.1994). Therefore, Decedent's estate is not a Missouri resident that Missouri has an interest in compensating, and the rationale in *Hicks* is inapplicable to the facts of this case.

These facts leave us with a situation in which neither Kansas nor Missouri has an interest that outweighs the interest of the other state in protecting the defendant from the law of the other state, and none of the parties being compensated are Missouri residents. Therefore, we find that Missouri lacks contacts substantial enough to create a more significant relationship to the occurrence and the parties which would warrant the application of Missouri law instead of Kansas law regarding the damages recoverable by Heirs. The trial court did not err in applying Kansas law to the damages recoverable and in reducing each verdict to $250,000. Heirs' point is denied.

### Submissibility of Comparative Fault Claim

■ In their second point on appeal, Heirs contend that the trial court erred in denying their motion for JNOV because BHCC failed to make a submissible case of comparative fault in that they did not produce competent evidence showing that Decedent's vehicle was stopped in the roadway or that she was driving below the legal speed limit.

■ The standard of review of the trial court's denial of a motion for JNOV and directed verdict is the same—we must determine whether the non-moving party made a submissible case. *Hodges v. City of St. Louis*, 217 S.W.3d 278, 279–80 (Mo. banc 2007). We view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict and disregard unfavorable evidence. *Id.* at 280. To make a submissible case, the non-moving party must present substantial evidence establishing each element of the claim. *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 184 (Mo.App. W.D. 2006). "Substantial evidence is competent evidence from which the trier of fact can reasonably decide the case." *Id.*

The trial court submitted BHCC's comparative fault instruction, which instructed the jury to assess a percentage of fault to Decedent if it believed that Decedent was negligent by either stopping her vehicle in a traveled lane of the interstate or by operating her vehicle in a traveled lane of the interstate at a speed of less than forty miles per hour. The jury ultimately assessed twenty percent of the fault to Decedent. Heirs argue that the only evidence produced by BHCC on this issue was erroneously admitted hearsay evidence from Wendy Taylor and Austin Souto, the occupants of the car which was traveling behind Beal. A trial court's decision regarding the admissibility of evidence will be affirmed absent a clear abuse of discretion.

---

**6.** Heirs are residents of Colorado, Kentucky, Michigan, and Germany, and BHCC is incorporated in Illinois.

*Peters v. ContiGroup,* 292 S.W.3d 380, 392 (Mo.App. W.D.2009).

At trial, portions of the deposition testimony of Taylor and Souto were entered into evidence. Souto testified that when he spoke to Beal after the accident, she told him that Decedent's car was stopped in the middle of the roadway. Although Taylor could not recall Beal's exact words, she thought that Beal may have made a similar statement to her. Heirs contend that this was the only evidence that could have possibly supported the comparative fault instruction but that it was inadmissible hearsay. However, when asked what she remembered about the impact, Beal testified that she remembered thinking, "Why is this car stopped on the interstate?" Heirs argue that Beal's lone statement is not substantial or competent evidence, particularly when Beal previously testified that she had very little recollection of the incident. This argument goes to the weight of Beal's testimony, which is to be determined by the jury.

Additional testimony from Taylor, Souto, and Bill Kennedy, an accident reconstructionist, also supports the submission of the comparative fault instruction. At trial, Heirs presented the testimony of Kennedy, who concluded that the difference between the speeds of Beal's vehicle and Decedent's vehicle was approximately sixty miles per hour. He estimated that Decedent was driving about forty miles per hour and that Beal was driving about one hundred miles per hour at the time of the impact. However, Souto testified that he did not see anything that indicated that Beal's car was going at a different speed than his vehicle, which was traveling at sixty-five to seventy miles per hour. He stated that Beal's vehicle appeared to be staying about the same distance apart from his vehicle. Taylor testified that she thought Beal's vehicle appeared to be traveling less than one hundred miles per hour.

■ Based on Kennedy's testimony that there was a sixty mile per hour difference in the speeds of the vehicles and Souto and Taylor's testimony that indicated Beal's vehicle was traveling at a speed of less than one hundred miles per hour, there was sufficient evidence from which the jury could infer that Decedent was driving at a speed of less than forty miles per hour. Furthermore, based on Beal's testimony that she wondered why Decedent's car was stopped in the road, there was testimony from which the jury could have found that Decedent's car was stopped, or at least that it was traveling at a speed of less than forty miles per hour. Therefore, the record contained evidence on the issue of comparative fault in addition to the statements of Souto and Taylor which Heirs contend were inadmissible hearsay. " 'A party cannot be prejudiced by the admission of allegedly inadmissible evidence if the challenged evidence is merely cumulative to other evidence admitted without objection.' " *Swartz v. Gale Webb Transp. Co.,* 215 S.W.3d 127, 134 (Mo. banc 2007) (quoting *Shelton v. Williamson (In re Estate of Looney),* 975 S.W.2d 508, 514–15 (Mo.App. S.D.1998)). Where there was additional evidence supporting the comparative fault instruction, BHCC made a submissible case, and the trial court did not err in denying Heirs' motion for JNOV. Heirs' point is denied.

### Submissibility of Pain and Suffering Claim

■ In their cross-appeal, BHCC first contends that the trial court erred in failing to direct a verdict in BHCC's favor on the estate's pain and suffering claim. BHCC argues that Heirs failed to produce competent evidence from which the jury could have found that Decedent was con-

scious after the collision.[7]

 Under Kansas Law, Decedent's estate could bring a cause of action to recover damages for pain and suffering that Decedent could have recovered had she survived. *See* K.S.A. § 60–1801. However, such damages "are recoverable only for pain and suffering which is consciously experienced." *Gregory v. Carey,* 246 Kan. 504, 791 P.2d 1329, 1333 (1990). "The determination of whether an injured party has experienced conscious pain and suffering may be established by either a lay witness or an expert medical witness." *Id.* at 1334.

In Kansas cases where evidence of consciousness is provided by lay witnesses, there is generally testimony showing that the decedent responded to statements with either sounds or movement, or simply that the witnesses had seen the decedent move or heard the decedent make noise. *See, e.g., Smith v. Printup,* 254 Kan. 315, 866 P.2d 985, 1012 (1993) (a witness testified that the decedent appeared to respond with a two-syllable sound and body movement to the witness's statement that help was on the way); *Folks v. Kansas Power & Light Co.,* 243 Kan. 57, 755 P.2d 1319, 1330 (1988) (a police officer testified that the decedent had appeared to be conscious and was making noises); *Pape v. Kansas Power & Light Co.,* 231 Kan. 441, 647 P.2d 320, 325 (1982) (the decedent had moaned and squeezed his wife's hand in response to her request to squeeze if he understood her).

Although Heirs contended at trial that Decedent was conscious between the time of the impact and her death, BHCC points out that there were no eyewitnesses who could testify as to Decedent's condition between the time of the impact and her death. Additionally, Dr. Mitchell testified that he could not medically determine whether or not Decedent was conscious. In light of what BHCC characterizes as an absence of evidence of consciousness, BHCC suggests that this case is analogous to two cases applying Kansas law. *See Cochrane v. Schneider Nat'l Carriers, Inc.,* 968 F.Supp. 613 (D.Kan.1997); *St. Clair v. Denny,* 245 Kan. 414, 781 P.2d 1043 (1989).

The decedent in *Cochrane* was driving on a Kansas highway when his car collided with a tractor-trailer. 968 F.Supp. at 614. The decedent was found unconscious, was not breathing, and did not make any sounds but had a pulse. *Id.* The decedent never regained consciousness, and medical records showed that he sustained injuries to the occipital area of his head. *Id.* at 614–15. After the decedent died from his injuries, a survival claim for pain and suffering was brought on behalf of his estate. *Id.* at 615. On this issue of post-impact conscious pain and suffering, the court found that the plaintiffs had failed to present evidence of consciousness after the impact. *Id.* at 617. Although the plaintiffs had offered medical records that showed the decedent had moved his toes and legs in response to touch, the plaintiffs could not show that the movements were anything beyond involuntary muscle responses. *Id.* The court in *St. Clair* similarly found that there was insufficient evidence indicating that a decedent who died in a car accident was conscious after the impact where the decedent had a pulse, but no one testified that she responded to stimuli or made any noises or movement. 781 P.2d at 1049.

BHCC argues that a traumatic impact, such as a vehicle collision, which precedes

7. The standard of review applicable to Heirs' second point on appeal also applies to BHCC's claim.

death can reasonably be expected to cause a loss of consciousness at the time of the impact. *See Garay v. Mo. Pac. R. Co.*, 38 F.Supp.2d 892, 901 (D.Kan.1999) (applying Kansas law). The court in *Garay* thus distinguished *Cochrane* and *St. Clair*, noting that, where the decedents died from injuries sustained in car accidents involving a traumatic impact, it was impossible to determine without speculation at what point the decedents lost consciousness. *Id.* BHCC contends that, therefore, Heirs must come forward with affirmative evidence of consciousness. However, the facts of *St. Clair* and *Cochrane* are readily distinguishable from this case. In those cases, the decedents sustained fatal injuries as a result of the collision itself. In the case at hand, the impact was clearly not as traumatic as that in *St. Clair* and *Cochrane* where Decedent suffered very few injuries as a result of the impact but, rather, died as a result of burns from the ensuing fire.

The totality of the evidence, viewed in the light most favorable to the verdict, shows the following: the driver's compartment of Decedent's car was not damaged by the impact; Decedent was not thrown from or within the vehicle; Decedent was alive and inhaling smoke after the impact; both parties suffered only relatively minor injuries as a result of the impact,[8] and Beal was conscious after the impact; Dr. Mitchell did not find any evidence that Decedent had sustained a skull fracture or experienced bleeding in the brain. Although Heirs have not presented direct evidence demonstrating consciousness, where the facts of the case indicate the absence of an impact traumatic enough to cause any serious injuries, like those experienced by the decedents in *Cochrane* and *St. Clair*, we find that the aforementioned evidence was sufficient to create a jury question as to whether Decedent was conscious between the time of the impact and the time of her death. Therefore, the trial court did not err in failing to direct a verdict in favor of BHCC on the estate's pain and suffering claim. BHCC's point is denied.

### Jury Instruction for Pain and Suffering Claim

In its final point on appeal, BHCC contends that the trial court erred in failing to instruct the jury that, on the claim for pain and suffering, it was required to find that Decedent "consciously" experienced pain and suffering after the accident.[9] The relevant portion of the challenged jury instruction, which was patterned after MAI 37.03, provided the following:

> If you assess a percentage of fault to Deborah Beal, then, disregarding any fault on the part of Ruth Baxter, you must determine the total amount of plaintiffs' damages to be such sum as will fairly and justly compensate The Estate of Ruth Baxter for any damages you believe Ruth Baxter sustained for mental anguish or pain and suffering as a direct result of the occurrence mentioned in the evidence.

"The question of whether or not a jury was properly instructed is a question of law." *Rice v. Bol*, 116 S.W.3d 599, 606 (Mo.App. W.D.2003). A jury ver-

---

8. The record shows that Beal suffered a broken nose and abrasions to her knees and forehead. Decedent suffered a broken arm, but Dr. Mitchell could not determine if it was a result of the impact or a result of thermal injuries, which could have caused the muscles to shrink, thereby breaking the arm bone.

9. BHCC's argument applies to both the damages instruction and the instructions on comparative fault, which BHCC asserts should have required a finding that Decedent experienced conscious pain and suffering.

dict will not be reversed on the ground of instructional error unless it appears that the instruction "misdirected, misled, or confused the jury, resulting in prejudice to the party challenging the instruction." *Id.* The test for determining whether the jury was misdirected, misled, or confused is " 'whether an average juror would correctly understand the applicable rule of law' " being conveyed by the jury instruction. *Id.* (quoting *Lashmet v. McQueary,* 954 S.W.2d 546, 550 (Mo.App. S.D.1997)). Prejudice resulting from an instructional error is sufficient to warrant reversal if the error materially affected the merits and outcome of the case. *Id.*

■■ In drafting the jury instructions, the trial court used the applicable MAI jury instructions except where it believed it was necessary to modify an MAI instruction to reflect a difference between Missouri and Kansas law. In a case where Kansas substantive law governs, if an MAI jury instruction correctly states the substantive law of Kansas, that instruction must be given. *Hicks,* 707 S.W.2d at 446. BHCC asserts that the instruction given did not correctly state the substantive law of Kansas in that it did not require the jury to find that Decedent "consciously" suffered mental anguish or pain and suffering.

The trial court did not err in failing to include the word "consciously" in the jury instruction for the pain and suffering claim. Inherent in the very notion of a person suffering mental anguish or pain and suffering is that they did so consciously. The addition of the word "consciously" was not necessary for the jury to understand that they were required to find that Decedent was conscious at some point between the time of the impact and the time

of her death, especially when BHCC's attorney reminded the jury during closing argument that it had to find that Heirs had proven consciousness in order to return a verdict in favor of Heirs. Therefore, it is unlikely that the submitted instruction misdirected, misled, or confused the jury, as an average juror would understand that he or she was required to find that Decedent "consciously" suffered mental anguish or pain and suffering.[10] BHCC's point is denied.

The judgment of the trial court is affirmed.

All concur.

---

**10.** Furthermore, we note that Kansas's pattern instruction itself does not use the term "conscious" when defining the damages allowed in a survival action for personal injury. *See* P.I.K. 171.02.